In the Matter of The COMPLAINT OF RIVER CITY TOWING SERVICES, INC., as Owner of the T/B K700, Petitioning for Exoneration from or Limitation of Liability

No. CIV. A. 01–1935.

United States District Court, E.D. Louisiana.

Oct. 1, 2001.

Don Keller Haycraft, Guenton Cyril Slawson, Jr., Maury C. Hebert, Liskow & Lewis, New Orleans, LA, for petitioner.

Denise A. Vinet, Vinet & Vinet, Lewis O. Unglesby, Unglesby, Koch & Reynolds, Donna Unkel Grodner, Grodner & Associates, Baton Rouge, LA, Robert J. Snyder, Attorney at Law, Lutcher, LA, for claimants.

BARBIER, District Judge.

Before the Court is a **Motion for Class Certification and for Status or Scheduling Conference (Rec.Doc. 9)**, filed by Claimants in this limitation proceeding. The motion is opposed by Petitioner in Limitation, River City Towing Services, Inc. ("River City"). Also before the Court is River City's **Motion to Strike Class Action Allegations (Rec. Doc. 10)**, which is opposed by Claimants. The motions, set for hearing on September 26, 2001, are before the Court on briefs without oral argument. Having considered the evidence submitted by both sides, the various memoranda, and the applicable law, the Court concludes, for the reasons that follow, that Claimants' **Motion for Class Certification should be DENIED**, and River City's **Motion to Strike Class Action Allegations** should be **GRANTED**.

## BACKGROUND

This action arises out of an alleged spill of over 3000 gallons of ethylene dichloride ("EDC") into the Mississippi River on or about April 30, 2000, through May 1, 2000, in Baton Rouge, Louisiana. Following the alleged spill, a class action was filed in state court in the Parish of St. James. The class action plaintiffs alleged in the petition that the Tanker Barge K700, owned by River City, was involved in the spill.

Thereafter, River City filed a Complaint in Limitation in this Court on June 25, 2001, pursuant to Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims, Federal Rules of Civil Procedure, and 46 U.S.C. § 181, *et seq.* The Court signed an order on June 26, 2001, directing the issuance of notice to claimants and restraining prosecution of claims against River City arising out of this incident. (Rec.Doc. 2).

The class action plaintiffs ("Claimants" herein) then filed a Claim and Answer to Complaint (Rec.Doc. 8) in the instant limitation proceeding, asserting claims as a class pursuant to Fed.R.Civ.P. 23. Claimants' Motion for Class Certification and River City's Motion to Strike the Class Allegations followed.

## DISCUSSION

Supplemental Rule A for Certain Admiralty and Maritime Claims states that the general Federal Rules of Civil Procedure are applicable in admiralty proceedings, "except to the extent that they are inconsistent with these Supplemental Rules." In *Lloyd's Leasing Limited v. Bates*, 902 F.2d 368, 370 (5th Cir.1990), the Fifth Circuit held that a class action may not be instituted in a limitation of liability proceeding, finding that Rule 23 and Supplemental Admiralty and Maritime Claims Rule F are incompatible due to three inconsistencies: (1) the class action interferes with the concursus contemplated by the limitation of liability proceeding; (2) the notice requirements of the limitation proceeding are more restrictive than those of the class action; and (3) "the entire thrust of Supplemental Rule F is that each claimant must appear individually and this is obviously inconsistent with the class action." *Id.*

As River City notes in its memoranda to the Court, apparently every district court that his addressed this specific issue of the possibility of a class action in a limitation proceeding has followed the Fifth Circuit's holding in *Lloyd's Leasing*. *See, e.g., Humphreys v. Hal Antillen, N.V.*, 1994 WL 682811 (E.D.La.1994); *Golnoy Barge Co. v. M/T SHINOUSSA*, 1991 WL 267941 (S.D.Tex.1991); *Great Lakes Dredge and Dock Co. v. City of Chicago*, 1996 WL 210081 (N.D.Ill.1996).

Claimants attempt to distinguish *Lloyd's Leasing* from the instant case on the grounds that the proposed class action could be certified under Rule 23(b)(1), which provides for a "mandatory" no-opt-out class. Claimants argue that subsection (b)(1) was specifically enacted to enable class certification in concursus proceedings like a limitation of liability proceeding. They argue that as a(b)(1), no-opt-out, limited fund class action, the inconsistencies discussed in *Lloyd's Leasing*, with respect to the concursus contemplated by the limitation proceeding and the different notice requirements, are not present, and,

therefore, that *Lloyd's Leasing* is not determinative in this case.

Claimants make an interesting argument, particularly with respect to the alleged appropriateness of a Rule 23(b)(1) class action in this case in light of the "limited fund" nature of a limitation of liability proceeding. However, in light of the Supreme Court's guidance on the question of whether mass tort claims are suitable for class certification under Rule 23(b)(1) in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999), the Court rejects Claimants' arguments for the following reasons.

In *Ortiz*, a large class of asbestos claimants, the asbestos manufacturer being sued, and the manufacturer's insurers negotiated to produce a settlement fund, contingent on the claimants' class certification as a mandatory class under Rule 23(b)(1) and approval of the settlement on a limited fund theory. 527 U.S. at 821–28, 119 S.Ct. at 2302–05. The Supreme Court found that the class certification was impermissible, concluding that a proposed class seeking certification on a limited fund theory under Rule 23(b)(1) must demonstrate that the fund is limited independently of agreement by the parties and must establish the inclusiveness of the proposed class as well as demonstrate the equitable treatment of the class members. *Id.* at 864, 119 S.Ct. at 2323.

While the *Ortiz* Court intentionally left unanswered the ultimate question of whether Rule 23(b)(1) may ever appropriately be used to aggregate individual tort claims, it discussed in detail the traditional characteristics of mandatory, limited fund class actions, and found that those characteristics offer guidance in determining when class certification on a limited fund theory is appropriate.[1]

The first and most distinctive characteristic is the inadequate, limited fund itself. The Court in *Ortiz* explained that claimants seeking class certification under (b)(1) must demonstrate the maximum amount of funds available to satisfy the claims and that the amount is insufficient to pay all the claims.

---

**1.** In discussing Rule 23(b)(1)'s legislative history, the Court also noted that it was clear the Advisory Committee did not contemplate that the mandatory class action provided for by (b)(1) would be used to aggregate unliquidated tort claims on a limited fund rationale and would probably find such a use of (b)(1) surprising. *Ortiz*, 527 U.S. at 843–45, 119 S.Ct. at 2313–14.

527 U.S. at 849–50, 119 S.Ct. at 2316. As noted above, the *Ortiz* Court concluded that the amount of available funds must be shown independently of the parties' agreement as to the value of the fund. *Id.* at 853, 119 S.Ct. at 2318.

Second, the whole of the inadequate fund must be devoted to the overwhelming claims, ensuring that the class as a whole is given the best deal. *Ortiz*, 527 U.S. at 839, 119 S.Ct. at 2311. Third, the claimants in a mandatory class action must demonstrate that they are treated equitably among themselves. *Id.* Claimants must not only show that the class include every person who might state a claim on a single set of facts, invoking a common theory of recovery, but also that the distribution of funds can be accomplished on an equitable pro rata basis. *Id.* at 840–41, 119 S.Ct. at 2312.

> In sum, mandatory class treatment through representative actions on a limited fund theory [is] justified with reference to a "fund" with a definitely ascertained limit, all of which would be distributed to satisfy all those with liquidated claims based on a common theory of liability, by an equitable, pro rata distribution.

*Id.* at 841, 119 S.Ct. at 2312.

In the context of mass torts, the *Ortiz* Court found that the problems involved with mandatory, limited fund class actions under (b)(1) are magnified. Most specifically, the Court discussed the tension between the limited fund class action's pro rata distribution in equity and the rights of individual tort victims at law, claiming unliquidated damages, and the difficulty in computing the total claims. *Id.* at 845, 850, 119 S.Ct. at 2313, 2316. The Court also noted that more general "inherent tension between representative suits and the day-in-court ideal," which it found to be even greater when applied to tort damage claims in a mandatory class, where tort victims who object to the class action have no inherent right to abstain. *Ortiz*, 527 U.S. at 846–47, 119 S.Ct. at 2315.

In conclusion, the *Ortiz* Court questioned generally "the applicability of Rule 23(b)(1)(B) to a fund and plan purporting to liquidate actual and potential tort claims," and found that, in any event, its purported application to the asbestos settlement claimants was improper. 527 U.S. at 864, 119 S.Ct. at 2323.

Bearing in mind the Supreme Court's discussion in *Ortiz*, the Court turns to the instant case, and likewise concludes that the proposed class certification is improper under Rule 23(b)(1). While a limitation of liability proceeding by definition seems to satisfy the limited fund requirement for a (b)(1) class action, there is always the possibility that the Court will deny limitation. In fact, the Claimants here argue in their Claim and Answer (Rec.Doc. 8), that the Limitation of Liability Act may be inapplicable to the instant case, or, alternatively, that limitation should be denied based on the privity and knowledge of the vessel's owners. Therefore, whether or not there is the kind of limited fund necessary to certify a (b)(1) class action is an issue that has not yet been resolved in the present case. Additionally, like the class in *Ortiz*, the instant proposed class has not demonstrated how the distribution of funds can be accomplished on an equitable pro rata basis, as the suit involves an unknown amount of unliquidated tort damages.

Finally, Claimants' arguments as to why the Fifth Circuit's holding in *Lloyd's Leasing* is not controlling in this matter ignore the third, and most basic, reason the Court in that case concluded that class actions and limitation proceedings are incompatible—that "the entire thrust of Supplemental Rule F is that each claimant must appear individually...." *Lloyd's Leasing*, 902 F.2d at 370.[2] The Fifth Circuit's holding did not distinguish different kinds of class actions, but simply stated that "class representation in the sense of Rule 23" is incompatible with a limitation proceeding and, therefore, should not be allowed in such proceedings. *Id.* (quoting Staring, *Limitation Practice and Procedure*, 53 Tul. L.Rev. 1134, 1150 (1979)).

---

**2.** The Court also notes that Claimants' Motion for Class Certification alleges that a class could be maintained under all three categories of Rule 23(b), and specifically argues that (b)(3) is particularly suited to this type of mass tort action.

The holding in *Lloyd's Leasing,* that class actions cannot be maintained in limitation proceedings, is controlling law in the Fifth Circuit, and Claimants have not demonstrated to the Court that sufficient reasons exist to deviate from the Fifth Circuit's decision in that case.[3] Accordingly;

**IT IS ORDERED** that Claimants' **Motion for Class Certification** (Rec.Doc. 9) is **DENIED**; River City's **Motion to Strike Class Allegations** (Rec.Doc. 10) is **GRANTED.**

**3.** If Claimants believe the Fifth Circuit would reconsider its earlier holding based on more recent developments in class action law, Claimants are permitted an immediate appeal from the

Court's denial of class certification in this admiralty action under 28 U.S.C. § 1292(a)(3), as the denial effectively dismisses some claimants from the suit. *See Lloyd's Leasing,* 902 F.2d at 370.